IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PETER "PETE" DEMOS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 1186 |
| | ) | |
| v. | ) | Judge Shadur |
| | ) | Magistrate Judge Cox |
| CHICAGO TRANSIT AUTHORITY, | ) | |
| an Illinois municipal corporation, | ) | |
| | ) | **JURY DEMANDED.** |
| Defendant. | ) | |

# AMENDED COMPLAINT

Plaintiff PETER DEMOS ("PETE" or Plaintiff), by and through his attorney, JOHN THOMAS MORAN, JR. of the MORAN LAW GROUP, complains against Defendant the CHICAGO TRANSIT AUTHORITY ("CTA"), an Illinois municipal corporation, as follows:

### NATURE OF THE CASE

1. This case alleges a violation of plaintiff's constitutional right to the equal protection of the law, to the rights, privileges and immunities arising under the Fourteenth Amendment, and to substantive due process under the Fourteenth Amendment based on the CTA's failure to apply to him the terms of a labor ruling that entitled Plaintiff and other trade union members to be made whole and their disciplinary records adjusted, corrected, or expunged, because the arbitrator on his third-step grievance followed the CTA's unbargained-for Revised Corrective Action Guidelines.

## PARTIES

2. Plaintiff PETER "PETE" DEMOS is a citizen of the United States and at all times relevant to this Complaint has resided within the Northern District of Illinois.

3. Plaintiff entered employment with the CTA in 1995.

4. At the time of discharge on April 27, 2005, he was assigned as a Service Truck Chauffer, and was responsible for transporting laborers and equipment to various work locations on CTA property during his dayshift hours of 7:00 a.m. to 3:30 p.m.

5. On April 13, 2005, plaintiff punched in at the CTA's West Shops at 6:52 a.m. Thereafter, he parked his CTA truck and got into his personal vehicle and drove to 2701 W. Madison Street where he was arrested by undercover Chicago police officers and brought to the station house and booked for soliciting a prostitute.

6. Plaintiff did not notify CTA management of his whereabouts that day. At 6:30 p.m. he returned to his work site and told his superior that he had experienced symptoms of a heart attack in the morning and had gone home. He related the same story to his manager later that day and added that he would not be at work the following day.

7. On his return to work on April 15, 2005, plaintiff submitted a written report to explain his unauthorized absence on the 13th, and repeated the same events.

8. Plaintiff was cited for violating General Rule 12(e), 14 (i) and (w) and for "poor job performance" because he had left his company vehicle unattended on company time. He was issued a Final Written Warning pursuant to the Revised Corrective Action Guidelines.

9. CTA management later learned that plaintiff had been arrested for solicitation and had been held at a police station for several hours.

10. Thereafter, plaintiff admitted that he had been arrested but denied engaging in any criminal activity. He told CTA Labor Relations Manager Jendrach that he had gotten coffee in the barn by the Laborers' office . While drinking the coffee, he realized that he had no money to put in the "can" to share the expenses, so he went to his car to retrieve his wallet. Walking to his vehicle, plaintiff suddenly felt chest and heart pain and decided to drive home to "get his cholesterol pills." He drove east on Washington and turned right (south) on Washtenau to get around an accident. Proceeding on Washtenau, he hit a pothole, causing the coffee to spill in his lap and on the car's center console and he stopped. While stopped, a woman walked up to the driver's side of his car and asked him if he wanted a "date." He responded, "You're crazy, out of your head!" She walked away. While cleaning up the spilled coffee, his car rolled forward until he put it in park to continue to clean. Suddenly, the same woman came up on the passenger's side of his car, and opened the door. Plaintiff told her "I told you "no" and she left, leaving the passenger door open. He was then arrested. He admitted that he had lied about going home and that he was untruthful in his Written Occurrence Report. He stated that he was embarrassed as a consequence of the incident and lied to protect himself from the anger of his girlfriend and the ridicule of his co-workers.

11. Jendrach recommended plaintiff be discharged and he was terminated.

12. Plaintiff timely grieved his termination through his union, the State and Municipal Teamsters, Chauffeurs & Helpers Union, Local 726 ("Union").

13. On June 9, 2005, hearing was held on the criminal complaint. The complaining witness was present, as was plaintiff and his counsel, Ronald J. Belmonte, who answered ready for trial. The complaining witness and the prosecutor conversed and the prosecutor then nonsuited the

complaint. The court record reflects that plaintiff's attorney demanded trial upon the prosecutor's nonsuit.

14. Using either the date that plaintiff was charged, April 13, 2005, or the date that the City nonsuited the criminal case, June 9, 2005, the Illinois Speedy Trial Act barred further prosecution at least two months before the date of the first scheduled arbitration hearing, January 26, 2006. 725 ILCS 5/103-5 (b).

15. The arbitrator subsequently found the Union's statement regarding the effect of a nonsuit to be "untrue."

16. The matter came for arbitration which was held on January 26, 2006 and March 2, 2006.

17. Post hearing briefs were submitted to the arbitrator on May 17, 2006, and the Union's brief named various persons who had been charged with making equally false statements who were not discharged.

18. Plaintiff's grievance was denied on June 6, 2006 by written ruling. A copy is attached as Exhibit A to this Complaint. Among other things, the arbitrator noted that the Union asserted that the-

> "'criminal charge of solicitation was ultimately "dismissed." In the end, even this proved to be untrue. Testimony at the arbitration established that the charge of solicitation was <u>deferred</u>, and thus 'could theoretically be reinstated at a later date.'" (Emphasis in the original.)

19. As a matter of law, a nonsuit in an Illinois criminal proceeding does not differ from a *nol pros*, it "leaves the matter in the same condition in which it was before the commencement of the prosecution" and the Illinois Speedy Trial Act protects a citizen by requiring reinstatement of a charge and prosecution within a time certain.

20. Before post-hearing briefs were exchanged here, a year earlier, on February 24, 2005, the CTA Trade Coalition filed a charge with the State Panel of the Illinois Labor Relations Board pursuant to the Illinois Public Labor Relations Act, 5 ILCS 315 (2004), which questioned whether the CTA's use of a "single correctional guideline" (i.e., the "corrective action guidelines"), never the subject of collective bargaining, could be relied upon for discipline, including termination (hereafter the "Charge").

21. On June 28, 2006, Administrative Law Judge Sharon Wells sustained the Charge, finding that the CTA's corrective action guidelines could not be relied upon in disciplinary proceedings and entered a comprehensive order to effectuate her ruling. (Exhibit B to this Complaint, the ALJ's "Recommended Decision and Order" dated June 28, 2006 ("Decision") with an attached "NOTICE TO EMPLOYEES."

22. Plaintiff is entitled to all the relief afforded by the ALJ's ruling.

23. The CTA's own policy Notice reflecting ALJ Wells' ruling, states in part that the CTA "WILL adjust, correct or expunge the disciplinary records of affected employees to reflect the CTA's reliance on previous guidelines in imposing discipline. . . ."

24. The Arbitrator's Decision in Plaintiff's grievance states that it is based directly upon the unbargained-for corrective action guidelines. Indeed, the core statement of the Decision is as follows:

> "As to the matter of alleged disparate treatment, the Arbitrator duly considered the Union's evidence that other bargaining unit employees accused of falsifying reports were not summarily terminated as was Demos. Under other circumstances, the Arbitrator might have been persuaded to consider the CTA's treatment of Demos unduly harsh and inconsistent with past practice. However, Demos' discharge was entirely in keeping with

> CTA's Corrective Action Guidelines which expressly state that employees "making untrue, dishonest or misleading reports" are subject to immediate discharge." (Decision, p. 17.)
> * * *
> Upon the whole of this record, then, the Arbitrator is persuaded that Demos was indeed guilty of "making untrue, dishonest and misleading reports" about the events of April 13, 2005, and was thus subject to immediate discharge pursuant to the CTA's Corrective Action Guidelines."

25. Plaintiff requested the CTA in writing twice to apply the ruling to his circumstances and the CTA declined.   Group Exhibit C to this Complaint.

## VENUE AND JURISDICTION

26. Defendant CHICAGO TRANSIT AUTHORITY is a duly constituted Illinois municipal corporation, which has a substantial physical and corporate presence within the Northern District of Illinois.  The Northern District of Illinois is an appropriate venue under 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this district.

27. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C §1331, 42 U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C. § 1343(c), and over attorney's fees under 42 U.S.C. § 1988.  Plaintiff complains of personal injuries suffered as a result of defendants' numerous violations of his constitutional rights.

## COUNT I
## (EQUAL PROTECTION VIOLATION)

28. Paragraphs 1 - 27 are incorporated by reference as if fully set out in this Count I.

29. The CTA, in violation of the Equal Protection Clause, vindictively refused to apply a policy to Plaintiff required to be applied to all those in plaintiff's class of similarly situated workers

and no rational basis exists for the differential treatment in worker discipline.

## COUNT II
### (EQUAL PROTECTION VIOLATION)

28. Paragraphs 1 - 27 are incorporated by reference as if fully set out in this Count II.

29. The CTA violated traditional equal protection under the Equal Protection Clause, by manipulative application of a ruling by an Administrative Law Judge, applicable on its face to all trade workers under discipline, by excluding its application to plaintiff but covering all other similarly situated union workers without a rational basis for the differential treatment.

## COUNT III
### (DUE PROCESS VIOLATION)

28. Paragraphs 1 - 27 are incorporated by reference as if fully set out in this Count III.

29. The CTA's refusal to equally apply the Administrative Law Judge's Decision on behalf of the State of Illinois, Illinois Labor Relations Board, to plaintiff violated his constitutional right to due process, and specifically, his right to substantive due process of law by failing to permit plaintiff to be evaluated under the appropriate disciplinary standards.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff PETER "PETE" DEMOS respectfully requests this Court enter an order on his behalf and against Defendant Chicago Transit Authority as follows:

a. The Court should declare, decree and adjudge that Defendant CTA has violated Plaintiff's constitutional rights;

b. Grant a preliminary and permanent injunction against Defendant CTA and its officers, agents, and managers, from continuing to violate those rights, and protect Plaintiff and other similarly situated employees by applying fairly the Decision of the

ALJ ordering new disciplinary hearings for all trade employees;

c. Enjoin the Defendant CTA and its officers, agents, and managers to comply with the ruling of the Illinois State Labor Board, and to refrain from retaliating against Mr. Demos and other similarly-situated employees and interfering with their rights and protections and award appropriate equitable relief;

d. Order the CTA to pay compensatory damages in an amount sufficient to punish it for its violation of Plaintiff's constitutional rights and to deter it from continuing with its discriminatory practices;

e. Order that Plaintiff's termination to be null and void, and order Plaintiff's reinstatement with back pay;

f. Award pre-judgment interest;

g. Award Plaintiff his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

By:

/s/ John Thomas Moran, Jr.

Moran Law Group
Suite 900
309 W. Washington St.
Chicago, IL. 60606
(312) 630-0200
j.t.m.moran@gmail.com