of employment – the mandatory subjects of bargaining.[13]  *American Federation of State, County and Municipal Employees v. Illinois State Labor Relations Board*, 190 Ill. App. 3d 259, 546 N.E. 2d 687, 6 PERI ¶4004 (1989); *Illinois Department of Central Management Services*, 17 PERI ¶2046 (IL LRB-SP 2001).  There is no dispute that the Respondent failed to bargain with the Charging Party prior to implementing its revised guidelines in March 2005.

Under *Central City Education Association, IEA/NEA v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 599 N.E. 2d 892 (1992), and *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 692 N.E. 2d 295, 14 PERI ¶4005 (1998), a decision is a mandatory subject of bargaining if it concerns wages, hours and terms and conditions of employment and 1) is either not a matter of inherent managerial authority or 2) is a matter of inherent managerial authority, but the Board determines that the benefits of bargaining outweigh the burdens bargaining imposes on the employer's authority. *Illinois Department of Central Management Services*, 17 PERI ¶2046.

---

[13] Section 7 provides in pertinent part as follows:

> A public employer and the exclusive representative have the authority and the duty to bargain collectively set forth in this Section.
>
> For the purposes of this Act, "to bargain collectively" means the performance of the mutual obligation of the public employer or his designated representative and the representative of the public employees to meet at reasonable times, including meetings in advance of the budget-making process, and to negotiate in good faith with respect to wages, hours, and other conditions of employment, not excluded by Section 4 of this Act, or the negotiation of an agreement, or any question arising thereunder and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession.

The Respondent's decision to change guidelines meets the first prong of the *Central City/Belvidere* analysis because it affects the wages, hours and working conditions of the bargaining unit. The Respondent's elimination of a step in the disciplinary process means that an employee would be subject to suspension at the second, instead of the third step in the process. The elimination of the injury on duty category and its combination with a safety category means that the CTA would more severely discipline an employee or discharge an employee sooner.

Further, the Respondent's changes in the guidelines does not concern a matter of inherent managerial authority. See Hardin, *Developing Labor Law*, 4th ed., at p. 1210-11 (2001) (rules affecting an employee's continuation of employment will be a mandatory subject of bargaining regardless of the employer's legitimate reason for its promulgation).

I further find that even if the Respondent's changes in the guidelines had been a matter of inherent managerial authority requiring a balancing of the benefits and burdens of bargaining, I would still conclude that those changes concerned a mandatory subject of bargaining. The Coalition's membership would clearly benefit from bargaining because their functions are not as time-sensitive as those of employees directly providing scheduled transportation services to the public. Thus, the Coalition could argue, for example, that penalties for absenteeism and tardiness for its members should not be as severe as for employees who operate buses and trains. The Coalition by its specific knowledge of its members may be in a unique position to devise penalties that deter and appropriately punish misconduct. *Cf. Chicago Park District*, 18 PERI ¶3026 (IL LRB-LP 2002) *aff'd Chicago Park District v. Illinois Labor Relations Board and Service Employees International Union, Local 73*, 20 PERI 145 (2004), *cert denied*, Illinois

Supreme Court, October 6, 2004. (employer committed unfair labor practice where it unilaterally reduced employees' hours; union could have proposed ways to address budget cuts that minimized impact on employees).

The Respondent has also failed to establish that requiring it to bargain regarding its guidelines would have imposed a significant burden on its authority. The Respondent recites that it would be easier for its managers if discipline was uniform for all unionized employees. However, I do not deem any inconvenience to the CTAs' managers to outweigh the Coalition members' interest in a disciplinary policy tailored to their peculiar working conditions. Moreover, the CTA operated under differently tailored policies of its own devising throughout its history. Thus, had it been necessary to apply the third part of the *Central City/ Belvidere* analysis, I would have determined that the balance of interests clearly favors bargaining. I conclude, therefore, regardless of whether the Respondent's changes in its guidelines was a matter of inherent managerial authority, it was a mandatory subject of bargaining over which the Respondent was required to bargain prior to implementation.

The CTA advances two arguments that the Coalition waived any right to bargain changes in the guidelines. First, the CTA contends that the non-interference clause in its agreements with members of the Coalition grants it the exclusive right to discipline and discharge its employees for proper cause. The CTA notes that employees have a right to grieve discipline. The CTA's argument is disingenuous. The Coalition does not dispute the CTA's right to discipline employees. Rather, the Coalition argues that the CTA must bargain changes in its disciplinary procedures and that such changes are mandatory subjects of bargaining. It is the guidelines that determine whether the CTA has fulfilled

the proper cause requirement to discipline. I conclude that the non-interference clause does not constitute a waiver of the Coalition's right to bargain regarding changes in disciplinary procedures.

Secondly, the CTA argues that the Coalition waived any right to bargain the disciplinary guidelines by its failure to object to previous guidelines that the CTA unilaterally implemented. The CTA reasons that because it has the exclusive right to discipline employees and had a past practice of developing, implementing and revising guidelines without bargaining with the Coalition or the Coalition grieving, the Coalition waived any right to bargain guidelines.

The Board has held that a waiver must be clear and unmistakable. *Village of Bensenville*, 19 PERI 119 (IL LRB-SP 2003); *Chicago Park District*, 18 PERI ¶3036 (IL LRB-LP 2002). The language sustaining the waiver must be specific, as waiver is never assumed. *Chicago Park District*, 18 PERI 3036. In this case, there is no language in the non-interference clause or in the agreement that specifically states that the Coalition waived its right to bargain changes in disciplinary procedures. Therefore, I reject the CTA's arguments and conclude that the Coalition did not waive its right to bargain over changes in disciplinary guidelines.

I also reject the CTA's argument that the Coalition waived any right to bargain by failing to object to previous changes in the guidelines. In *NLRB v. Miller Brewing Co.*, 408 F. 2d 12, 70 LRRM 2907, 2909 (9th Cir. 1969), the court stated:

> [I]t is not true that a right once waived under the Act is lost forever [Citation omitted.] Each time the bargainable incident occurs – each time new rules are issued – Union has the election of requesting negotiations or not. An opportunity once rejected does not result in a permanent "close-

15

out;" as in contract law, an offer once declined but then remade can be subsequently accepted. [Citation omitted.]

As there is no dispute that the Respondent failed to bargain over the guidelines, I conclude that the Respondent violated Section 10(a) (4) and (1) of the Act when it refused to bargain changes in its guidelines.

Accordingly, as is the Board's policy in unfair labor practices cases where the employer has unilaterally changed the wages, hours or terms and conditions of a bargaining unit, I recommend that the Board order the Respondent to restore the status quo ante and to bargain with the Charging Party in good faith upon request until such time as the parties reach agreement or a legitimate impasse. *Illinois Department of Central Management Services*, 17 PERI ¶2046. Restoration of the status quo includes compensating affected employees and correcting their disciplinary records.

## V.   CONCLUSIONS OF LAW

The Respondent, in violation of Section 10(a) (4) and (1) of the Act failed to provide an opportunity to bargain to the Charging Party prior to the Respondent's changing its corrective action guidelines and vehicle safety guidelines.

## VI.   RECOMMENDED DECISION AND ORDER

IT IS HEREBY ORDERED that the Respondent, the Chicago Transit Authority, its officers and agents shall

1.   Cease and desist from

(a) Failing and refusing to bargain collectively in good faith with the Charging Party, the CTA Trade Coalition, regarding changes in the CTA's corrective action guidelines and vehicle safety guidelines.

(b) In any like or related manner, interfering with restraining or coercing its employees in the exercise of the rights guaranteed them in the Act.

2. Take the following affirmative action necessary to effectuate the policies of the Act:

(a) On request, bargain collectively with the CTA Trade Coalition regarding changes in the corrective action guidelines and vehicle safety guidelines.

(b) Restore the status quo ante with respect to the changes to the guidelines until such time as it bargains to agreement or to legitimate impasse with the CTA Trade Coalition.

(c) Make whole members of the unit for lost wages beginning from the date of the changes to the guidelines until the date of restoring the status quo ante with interest as allowed under the Act.

(d) Adjust, correct or expunge the disciplinary records of affected employees to reflect the CTA's reliance on previous guidelines in imposing discipline rather than reliance on the guidelines implemented in March 2005.

(e) Preserve and on request make available to the Board or its agents for examination and copying all payroll and other records required to calculate the amount of back pay due under the terms of this order.

(f) Post at all places where notices to employees are normally posted, copies of the Notice attached hereto. Copies of the Notice shall be posted, after being duly signed, in conspicuous places and be maintained for a period of 60 consecutive days. Respondent will take reasonable efforts to ensure that the notices are not altered, defaced or covered by any other material.

17

(g) Notify the Board in writing, within 20 days from the date of this Decision of the steps Respondent has taken to comply herewith.

## VIII. EXCEPTIONS

Pursuant to Section 1200.135 of the Board's Rules, parties may file exceptions to the Administrative Law Judge's Recommended Decision and Order and briefs in support of those exceptions no later than 30 days after service of this Recommended Decision and Order.  Parties may file responses to exceptions, and briefs in support of the responses, no later than 15 days after service of the exceptions.  In such responses, parties that have not previously filed exceptions may include cross-exceptions to any portion of the Administrative Law Judge's Recommendation.  Within 7 days from the filing of cross-exceptions, parties may file cross-responses to the cross exceptions.  Exceptions, responses, cross-exceptions and cross-responses must be filed with the Board's General Counsel, Jacalyn J. Zimmerman, 160 North LaSalle Street, Suite S-400, Chicago, Illinois 60601-3103, and served on all other parties.  Exceptions, responses, cross-exceptions and cross-responses **will not** be accepted at the Board's Springfield office.  The exceptions and/or cross-exceptions sent to the Board must contain a statement listing the other parties to the case and verifying that the exceptions and/or cross exceptions will not be considered

without this statement.  If no exceptions have been filed within the 30-day period, the parties will be deemed to have waived their exceptions.

**Issued at Chicago, Illinois on this 28th day of June, 2006.**

                              STATE OF ILLINOIS

                              **ILLINOIS LABOR RELATIONS BOARD
                              LOCAL PANEL**

                              *Sharon B. Wells*
                              **Sharon B. Wells
                              Administrative Law Judge**

After a hearing in which all parties had the opportunity to present their evidence, the Illinois Labor Relations Board found that the Chicago Transit Authority has violated the Illinois Public Labor Relations Act, and has ordered us to post this Notice.   We hereby notify you that:

The Illinois Public Labor Relations Act (Act) gives you as an employee, these rights:

> To engage in self-organization
> To form join, or assist unions
> To bargain collectively through a representative of your own choosing
> To act together with other employees to bargain collectively or for other mutual aid or protection
> To refrain from these activities

Accordingly, we assure you that:

WE WILL cease and desist from refusing to bargain with the CTA Trade Coalition regarding changes to the corrective action guidelines and vehicle safety guidelines.

WE WILL restore the status quo ante with respect to the corrective action guidelines and vehicle safety guidelines until such time as we have bargained to impasse or to a resolution.

WE WILL make whole employees for any loss of earnings suffered as a result of the unilateral implementation of changes to the corrective action guidelines and vehicle safety guidelines.

WE WILL adjust, correct or expunge the disciplinary records of affected employees to reflect the CTA's reliance on previous guidelines in imposing discipline rather than reliance on the guidelines implemented in March 2005.


DATE _____          _____
                              Chicago Transit Authority


                              _____
                                   (Representative)(Title)

# NOTICE TO EMPLOYEES

## FROM THE
## ILLINOIS LABOR RELATIONS BOARD

After a hearing in which all parties had the opportunity to present their evidence, the Illinois Labor Relations Board found that the Chicago Transit Authority has violated the Illinois Public Labor Relations Act, and has ordered us to post this Notice. We hereby notify you that:
The Illinois Public Labor Relations Act (Act) gives you as an employee, these rights:

To engage in self-organization
To form join, or assist unions
To bargain collectively through a representative of your own choosing
To act together with other employees to bargain collectively or for other mutual aid or protection
To refrain from these activities

Accordingly, we assure you that:

WE WILL cease and desist from refusing to bargain with the CTA Trade Coalition regarding changes to the corrective action guidelines and vehicle safety guidelines.

WE WILL restore the status quo ante with respect to the corrective action guidelines and vehicle safety guidelines until such time as we have bargained to impasse or to a resolution.

WE WILL make whole employees for any loss of earnings suffered as a result of the unilateral implementation of changes to the corrective action guidelines and vehicle safety guidelines.

WE WILL adjust, correct or expunge the disciplinary records of affected employees to reflect the CTA's reliance on previous guidelines in imposing discipline rather than reliance on the guidelines implemented in March 2005.

DATE _____     _____
                         Chicago Transit Authority

                         _____
                         (Representative)(Title)

## ILLINOIS LABOR RELATIONS BOARD

320 West Washington, Suite 500          160 North LaSalle Street, Suite S-400
Springfield, Illinois 62701             Chicago, Illinois 60601-3103
(217) 785-3155                          (312) 793-6400

### THIS IS AN OFFICIAL GOVERNMENT NOTICE
### AND MUST NOT BE DEFACED.

### STATE OF ILLINOIS
### ILLINOIS LABOR RELATIONS BOARD
### LOCAL PANEL

| | |
|---|---|
| CTA Trade Coalition, | ) |
| | ) |
| Charging Party | ) |
| and | )      Case No. L-CA-05-039 |
| | ) |
| Chicago Transit Authority, | ) |
| | ) |
| Respondent | ) |

### AFFIDAVIT OF SERVICE

I, Missy McDermott, on oath state that I have this 28th day of June, 2006, served the attached ADMINISTRATIVE LAW JUDGE'S RECOMMENDED DECISION AND ORDER issued in the above-captioned case on each of the parties listed hereinbelow by depositing copies thereof in the U.S. mail at 160 North LaSalle Street, Suite S-400, Chicago, Illinois 60601-3103, addressed as indicated and with postage prepaid for certified mail, return receipt requested, except as indicated.

Ms. Michele Cotrupe
Asher, Gittler, Greenfield & D'Alba
200 West Jackson Blvd., Suite 1900
Chicago, IL 60606

Mr. Brad Jansen
Chicago Transit Authority, Law Department
P.O. Box 7564
Chicago, IL 60680-7564

Designated Agent —Missy McDermott- Illinois Labor Relations Board