**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PETER "PETE" DEMOS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 1186 |
| | ) | |
| v. | ) | Judge Shadur |
| | ) | Magistrate Judge Cox |
| CHICAGO TRANSIT AUTHORITY, | ) | |
| an Illinois municipal corporation, | ) | |
| | ) | **JURY DEMANDED.** |
| Defendant. | ) | |

# FIRST AMENDED COMPLAINT

Plaintiff PETER DEMOS ("PETE" or Plaintiff), by and through his attorney, JOHN THOMAS MORAN, JR. of the MORAN LAW GROUP, complains against Defendant the CHICAGO TRANSIT AUTHORITY ("CTA"), an Illinois municipal corporation, as follows:

**NATURE OF THE CASE**

1.   This case alleges a violation of plaintiff's constitutional right to the equal protection of the law, to the rights, privileges and immunities arising under the Fourteenth Amendment, and to substantive due process under the Fourteenth Amendment based on the CTA's failure to apply to him the terms of a labor ruling that entitled Plaintiff and other trade union members to be made whole and their disciplinary records adjusted, corrected, or expunged, because the arbitrator on his third-step grievance followed the CTA's unbargained-for Revised Corrective Action Guidelines.  It also alleges a violation of the Illinois Uniform Arbitration Act, 710 ILCS 5/1 -23 *et seq*.

**PARTIES**

2.    Plaintiff PETER "PETE" DEMOS is a citizen of the United States and at all times relevant

to this Complaint has resided within the Northern District of Illinois.

3.    Plaintiff entered employment with the CTA in 1995.

4.    At the time of discharge on April 27, 2005, he was assigned as a Service Truck Chauffeur, and

was responsible for transporting laborers and equipment to various work locations on CTA

property during his day shift hours of 7:00 a.m. to 3:30 p.m.

5.    On April 13, 2005, plaintiff punched in at the CTA's West Shops at 6:52 a.m. Thereafter, he

parked his CTA truck and got into his personal vehicle and drove to 2701 W. Madison Street

where he was arrested by undercover Chicago police officers and brought to the station house

and booked for soliciting a prostitute.

6.    Plaintiff did not notify CTA management of his whereabouts that day. At 6:30 p.m. he

returned to his work site and told his superior that he had experienced symptoms of a heart

attack in the morning and had gone home. He related the same story to his manager later that

day and added that he would not be at work the following day.

7.    On his return to work on April 15, 2005, plaintiff submitted a written report to explain his

unauthorized absence on the 13th, and repeated the same events.

8.    Plaintiff was cited for violating General Rule 12(e), 14 (i) and (w) and for "poor job

performance" because he had left his company vehicle unattended on company time. He was

issued a Final Written Warning pursuant to the Revised Corrective Action Guidelines.

9.    At all times relevant to this complaint, collective bargaining agreements between members

of the "trade unions" and the CTA were in place and effective.

10.     CTA management later learned that plaintiff had been arrested for solicitation and had been

         held at a police station for several hours.

11.     Thereafter, plaintiff admitted that he had been arrested but denied engaging in any criminal

         activity. He told CTA Labor Relations Manager Jendrach that he had gotten coffee in the barn

         by the Laborers' office .   While drinking the coffee, he realized that he had no money to put

         in the "can" to share the expenses, so he went to his car to retrieve his wallet.  Walking to his

         vehicle, plaintiff suddenly felt chest and heart pain and decided to drive home to "get his

         cholesterol pills." He drove east on Washington and turned right (south) on Washtenau to get

         around an accident.  Proceeding on Washtenau, he hit a pothole, causing the coffee to spill

         in his lap and on the car's center console and he stopped.   While stopped, a woman walked

         up to the driver's side of his car and asked him if he wanted a "date." He responded, "You're

         crazy, out of your head!"  She walked away.   While cleaning up the spilled coffee, his car

         rolled forward until he put it in park to continue to clean.  Suddenly, the same woman came

         up on the passenger's side of his car, and opened the door.  Plaintiff told her "I told you "no"

         and she left, leaving the passenger door open. He was then arrested.  He admitted that he had

         lied about going home and that he was untruthful in his Written Occurrence Report.  He stated

         that he was embarrassed as a consequence of the incident and lied to protect himself from the

         anger of his girlfriend and the ridicule of his co-workers.

12.     Jendrach recommended plaintiff be discharged and he was terminated.

13.     Plaintiff timely grieved his termination through his union, the State and Municipal Teamsters,

         Chauffeurs & Helpers Union, Local 726 ("Union").

14.     On June 9, 2005, hearing was held on the criminal complaint.   The complaining witness was

present, as was plaintiff and his counsel, Ronald J. Belmonte, who answered ready for trial.

The complaining witness and the prosecutor conversed and the prosecutor then nonsuited the

complaint.   The court record reflects that plaintiff's attorney demanded trial upon the

prosecutor's nonsuit.

15.     Using either the date that plaintiff was charged, April 13, 2005, or the date that the City

nonsuited the criminal case, June 9, 2005, the Illinois Speedy Trial Act barred further

prosecution at least two months before the date of the first scheduled arbitration hearing,

January 26, 2006.   725 ILCS 5/103-5 (b).

16.     The arbitrator subsequently found the Union's statement regarding the effect of a nonsuit to

be "untrue."

17.     The matter came for arbitration which was held on January 26, 2006 and March 2, 2006.

18.     Post hearing briefs were submitted to the arbitrator on May 17, 2006, and the Union's brief

named various persons who had been charged with making equally false statements who were

not discharged.

19.     Plaintiff's grievance was denied on June 6, 2006 by written ruling.   A copy is attached as

Exhibit A to this Complaint.  Among other things, the arbitrator noted that the Union asserted

that the-

> "'criminal charge of solicitation was ultimately "dismissed."  In the end, even this
> proved to be untrue.  Testimony at the arbitration established that the charge of
> solicitation was <u>deferred</u>, and thus 'could theoretically be reinstated at a later date.'"
> (Emphasis in the original.)

20.     As a matter of law, a nonsuit in an Illinois criminal proceeding does not differ from a *nol*

*pros*, it "leaves the matter in the same condition in which it was before the commencement of the prosecution" and the Illinois Speedy Trial Act protects a citizen by requiring reinstatement of a charge and prosecution within a time certain.

21.    Before post-hearing briefs were exchanged here, a year earlier, on February 24, 2005,   the CTA Trade Coalition filed a charge with the State Panel of the Illinois Labor Relations Board pursuant to the Illinois Public Labor Relations Act, 5 ILCS 315 (2004), which questioned whether the CTA's use of a "single correctional guideline" (i.e., the "corrective action guidelines"), never the subject of collective bargaining, could be relied upon for discipline, including termination (hereafter the "Charge").

22.    On June 28, 2006, Administrative Law Judge Sharon Wells sustained the Charge, finding that the CTA's corrective action guidelines could not be relied upon in disciplinary proceedings and entered a comprehensive order to effectuate her ruling.  (Exhibit B to this Complaint, the ALJ's "Recommended Decision and Order" dated June 28, 2006 ("Decision") with an attached "NOTICE TO EMPLOYEES."  That notice applied on its face to all trade union employees of the CTA and ordered substantial relief to affected workers.  A copy of that Notice was never provided to plaintiff by the CTA.

23.    Plaintiff is entitled to all the relief afforded by the ALJ's ruling.

24.    The CTA's own policy Notice reflecting ALJ Wells' ruling, states in part that the CTA "WILL adjust, correct or expunge the disciplinary records of affected employees to reflect the CTA's reliance on previous guidelines in imposing discipline. . . ."

25.    The Arbitrator's Decision in Plaintiff's grievance states that it is based directly upon the unbargained-for corrective action guidelines.  Indeed, the core statement of the Decision is

as follows:

> "As to the matter of alleged disparate treatment, the Arbitrator duly considered the Union's evidence that other bargaining unit employees accused of falsifying reports were not summarily terminated as was Demos. Under other circumstances, the Arbitrator might have been persuaded to consider the CTA's treatment of Demos unduly harsh and inconsistent with past practice. However, Demos' discharge was entirely in keeping with CTA's Corrective Action Guidelines which expressly state that employees "making untrue, dishonest or misleading reports" are subject to immediate discharge." (Decision, p. 17.)
> * * *
> Upon the whole of this record, then, the Arbitrator is persuaded that Demos was indeed guilty of "making untrue, dishonest and misleading reports" about the events of April 13, 2005, and was thus subject to immediate discharge pursuant to the CTA's Corrective Action Guidelines."

26.    Plaintiff requested the CTA in writing twice to apply the ruling to his circumstances and the CTA declined.   Group Exhibit C to this Complaint.

27.    The "corrective action guidelines" applied by the arbitrator to plaintiff's grievance were never a part of the CBA and never agreed to by the affected trade unions, including in particular, plaintiff's union.

## VENUE AND JURISDICTION

28.    Defendant CHICAGO TRANSIT AUTHORITY is a duly constituted Illinois municipal corporation, which has a substantial physical and corporate presence within the Northern District of Illinois.  The Northern District of Illinois is an appropriate venue under 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this district.

29.    This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C §1331, 42

U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C. § 1343©), and over attorney's

fees under 42 U.S.C. § 1988.  Plaintiff complains of personal injuries suffered as a result of

defendants' numerous violations of his constitutional rights.  The Court has supplemental

jurisdiction over the state law claim pleaded in this complaint pursuant to 28 U.S.C. § 1367.

## COUNT I
## (EQUAL PROTECTION VIOLATION)

30.    Paragraphs 1 - 29 are incorporated by reference as if fully set out in this Count I.

31.    The CTA, in violation of the Equal Protection Clause, vindictively refused to apply a policy

       to Plaintiff required to be applied to all those in plaintiff's class of similarly situated workers

       and no rational basis exists for the differential treatment in worker discipline.

## COUNT II
## (EQUAL PROTECTION VIOLATION)

30.    Paragraphs 1 - 29 are incorporated by reference as if fully set out in this Count II.

31.    The CTA violated traditional equal protection under the Equal Protection Clause, by

       manipulative application of a ruling by an Administrative Law Judge, applicable on its face

       to all trade workers under discipline, by excluding its application to plaintiff but covering all

       other similarly situated union workers without a rational basis for the differential treatment.

## COUNT III
## (DUE PROCESS VIOLATION)

30.    Paragraphs 1 - 29 are incorporated by reference as if fully set out in this Count III.

31.    The CTA's refusal to equally apply the Administrative Law Judge's Decision on behalf of

       the State of Illinois, Illinois Labor Relations Board, to plaintiff violated his constitutional

       right to due process, and specifically, his right to substantive due process of law by failing

to permit plaintiff to be evaluated under the appropriate disciplinary standards.

<h3 align="center">PRAYER FOR RELIEF ON CONSTITUTIONAL COUNTS</h3>

WHEREFORE, Plaintiff PETER "PETE" DEMOS respectfully requests this Court enter an order on his behalf and against Defendant Chicago Transit Authority as follows:

a.   The Court should declare, decree and adjudge that Defendant CTA has violated Plaintiff's constitutional rights;

b.   Grant a preliminary and permanent injunction against Defendant CTA and its officers, agents, and managers, from continuing to violate those rights, and protect Plaintiff and other similarly situated employees by applying fairly the Decision of the ALJ ordering new disciplinary hearings for all trade employees;

c.   Enjoin the Defendant CTA and its officers, agents, and managers to comply with the ruling of the Illinois State Labor Board, and to refrain from retaliating against Mr. Demos and other similarly-situated employees and interfering with their rights and protections and award appropriate equitable relief;

d.   Order the CTA to pay compensatory damages in an amount sufficient to punish it for its violation of Plaintiff's constitutional rights and to deter it from continuing with its discriminatory practices;

e.   Order that Plaintiff's termination to be null and void, and order Plaintiff's reinstatement with back pay;

f.   Award pre-judgment interest.

g.   Award Plaintiff his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT IV

### (THE ARBITRATOR ACTED OUTSIDE OF HIS AUTHORITY IN RELYING ON THE UNBARGAINED-FOR "CORRECTIVE ACTION GUIDELINES" IN ALLOWING THE CTA TO DISCHARGE PLAINTIFF.)

30.     Paragraphs 1 - 29 are incorporated by reference as if fully set out in this Count IV.

31.     Though the language of the CBA applicable to plaintiff was clear and unambiguous, the arbitrator ignored the CBA and relied upon the CTA management's unbargained-for "corrective action guidelines".

32.     An arbitrator's authority to act in Illinois arises solely out of the CBA. He must give effect to the intend of the parties to the CBA.

33.     Here, in relying upon the "corrective action guidelines," the arbitrator altered the terms of the CBA, an action in excess of his authority, as it constituted injecting his own terms into the agreement between the parties, *i.e.*, the trade unions and the CTA.

34.     The arbitrator acted completely outside the scope of his authority in relying upon unbargained-for "corrective action guidelines" on which to base his award and therefore the award must be vacated.  710 ILCS 5/12 (3).

35.     Both the arbitrator and the defendant are chargeable with notice that the arbitrator exceeded his authority in relying on the "corrective action guidelines" in making his award as a charge on this precise issue was presented to the Illinois Labor Relations Board pursuant to the Illinois Public Labor Relations Act as set out above in paragraph 20.

36.     Plaintiff is entitled to enforce the terms of the CBA to the letter.  Reliance upon unbargained-for rules and regulations governing conduct by the arbitrator here necessitates a finding that

he acted beyond his authority and his award must be vacated.

37.    Pursuant to 710 ILCS 5/14, this court has jurisdiction to award costs and attorney fees

pursuant to hearing to plaintiff on this application to vacate an award.

38..    As set forth in paragraphs 22 and 23, above, the ALJ's award was fully retroactive and

ordered defendant to "adjust, correct or expunge the disciplinary records of affected

employees to reflect the CTA's reliance on previous guidelines in imposing discipline. . . ."

39.    Though demand was made upon defendant to comply with the CTA's order in the case of

plaintiff, it has willfully refused to do so and continues to refuse to do so without good cause.

WHEREFORE, as to this Court IV,  plaintiff prays that this Court order the arbitration award

vacated, and order such other relief as law and equity require, and further, award plaintiff his

reasonable attorney's fees and costs of suit.  The Court has the authority to order plaintiff reinstated,

to order back pay, and any such other relief as is consistent with the "make whole" basis of labor

law.


By:    /s/ John Thomas Moran, Jr.


Moran Law Group
309 W. Washington St., Suite 900
Chicago, Illinois  60606
(312) 630-0200
j.t.m.moran@gmail.com

10

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that a copy of the foregoing PLAINTIFF'S FIRST AMENDED COMPLAINT  was served this April 24, 2008, by e-filing in accordance with Federal Rule of Civil Procedure 5, Local Rule 5.5, and the General Order on Electronic Case Filing, XI( c), on:

Carole A. Corns,  CTA Attorney
567 W. Lake Street, Chicago,
Illinois 60601
ccorns@transitchicago.com

/s/John Thomas Moran,Jr.
Attorney for Plaintiff.

MORAN LAW GROUP
309 W. Washington, Suite
900 Chicago, IL 60606
(312)630-0200