IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PETER "PETE" DEMOS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 1186 |
| | ) | |
| v. | ) | Judge Milton I. Shadur, |
| | ) | Presiding. |
| CHICAGO TRANSIT AUTHORITY, | ) | Magistrate Judge Susan Cox. |
| an Illinois municipal corporation, | ) | |
| | ) | **JURY DEMANDED.** |
| Defendant. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff PETER DEMOS ("PETE" or Plaintiff), by and through his attorney, JOHN THOMAS MORAN, JR. of the MORAN LAW GROUP, complains against Defendant the CHICAGO TRANSIT AUTHORITY ("CTA"), an Illinois municipal corporation, as follows:

**NATURE OF THE CASE**

1. This case alleges a violation of plaintiff's constitutional right to the equal protection of the law, and to those rights, privileges and immunities arising under the Fourteenth Amendment, and his right to substantive due process under the Fourteenth Amendment based on the CTA's refusal to (a) provide him notice of and (b) apply to him the terms of a ruling by the Illinois Labor Relations Board (hereafter the "Board") that applied on its face to all "affected employees," language further reflected in the Notice the Board's Administrative Law Judge ordered to be placed at all CTA worksites. The ruling created a property right entitling the Plaintiff and other affected employee/trade union members to be made whole and their disciplinary records adjusted, corrected, or expunged, because

the CTA's unbargained-for Revised Corrective Action Guidelines formed a material part of an arbitrator's decision to deny his grieved termination.

**PARTIES**

2. Plaintiff PETER "PETE" DEMOS is a citizen of the United States and the State of Illinois and at all times relevant to this Complaint has resided within the Northern District of Illinois.

3. Plaintiff entered employment with the CTA in 1995. At the time of his discharge on April 27, 2005, he was assigned as a Service Truck Chauffeur, and was responsible for transporting laborers and equipment to various work locations on CTA property during his day shift hours of 7:00 a.m. to 3:30 p.m.

4. On April 13, 2005, plaintiff punched in at the CTA's West Shops at 6:52 a.m. Thereafter, he parked his CTA truck and got into his personal vehicle and drove to 2701 W. Madison Street where he was arrested by undercover Chicago police officers and brought to the station house and booked for soliciting a prostitute.

5. Plaintiff did not notify CTA management of his whereabouts that day. At 6:30 p.m. he returned to his work site and told his superior that he had experienced symptoms of a heart attack in the morning and had gone home. He related the same story to his manager later that day and added that he would not be at work the following day.

6. On his return to work on April 15, 2005, plaintiff submitted a written report to explain his unauthorized absence on the 13th, and repeated the same events.

7. Plaintiff was cited for violating General Rule 12(e), 14 (i) and (w) and for "poor job performance" because he had left his company vehicle unattended on company time. He

was issued a Final Written Warning this time pursuant to the unbargained for "Revised Corrective Action Guidelines."

8. CTA management later learned that plaintiff had been arrested for solicitation and had been held at a police station for several hours.

9. Thereafter, plaintiff admitted that he had been arrested but denied engaging in any criminal activity. He admitted that he had lied about going home and that he was untruthful in his Written Occurrence Report. He stated that he was embarrassed as a consequence of the incident and lied to protect himself from the anger of his girlfriend and the ridicule of his co-workers.

10. Plaintiff's supervisor recommended plaintiff be discharged and he was terminated.

11. Plaintiff timely grieved his termination through his union, the State and Municipal Teamsters, Chauffeurs & Helpers Union, Local 726 ("Union").

12. On June 9, 2005, hearing was held on the criminal complaint. The complaining witness was present, as was plaintiff and his counsel, Ronald J. Belmonte, who answered ready for trial. The court record reflects that plaintiff's attorney demanded trial upon the prosecutor's nonsuit.

13. The Illinois Speedy Trial Act barred further prosecution at least two months before the date of Plaintiff's first scheduled arbitration hearing date, January 26, 2006. 725 ILCS 5/103-5 (b). The arbitrator's finding that the Union's statement regarding the effect of a nonsuit was "untrue" was manifestly erroneous.

14. Arbitration was held on January 26, 2006 and March 2, 2006.

15. Post hearing briefs were submitted on May 17, 2006.

16. The Union's brief named various workers who had been similarly charged with making false statements of equal or greater weight who were not discharged.

17. Plaintiff's grievance was denied on June 6, 2006 by written ruling. A copy is attached as Exhibit A to this Complaint. Among other things, the arbitrator noted incorrectly that the Union's contention that the "'criminal charge of solicitation was ultimately "dismissed," [was] untrue. Testimony at the arbitration established that the charge of solicitation was <u>deferred</u>, and thus 'could theoretically be reinstated at a later date.'" (Emphasis in the original.)

18. More than a year before post-hearing briefs were exchanged, on February 24, 2005, the CTA Trade Coalition - a group of trade unions not including plaintiff's - filed a charge with the State Panel of the Illinois Labor Relations Board pursuant to the Illinois Public Labor Relations Act, 5 ILCS 315 (2004). That charge questioned the CTA's use in discipline of a "single correctional guideline" (*i.e.*, the "corrective action guidelines"), which was never the subject of collective bargaining, and disputed in consequence, whether it could be relied upon for discipline, including termination (hereafter the "Charge").

19. Here, the Arbitrator's Decision states that it is based directly upon the unbargained-for corrective action guidelines. Indeed, the core statement of the Decision is as follows:

> "As to the matter of alleged disparate treatment, the Arbitrator duly considered the Union's evidence that other bargaining unit employees accused of falsifying reports were not summarily terminated as was Demos. Under other circumstances, the Arbitrator might have been persuaded to consider the CTA's treatment of Demos unduly harsh and inconsistent with past practice. *However, Demos' discharge was entirely in keeping*

> *with CTA's Corrective Action Guidelines which expressly state that employees "making untrue, dishonest or misleading reports" are subject to immediate discharge."* (Decision, p. 17.) (Emphasis supplied.)
>
> * * *
>
> Upon the whole of this record, then, the Arbitrator is persuaded that Demos was indeed guilty of "making untrue, dishonest and misleading reports" about the events of April 13, 2005, *and was thus subject to immediate discharge pursuant to the CTA's Corrective Action Guidelines*." ) (Emphasis supplied.)

20. On June 28, 2006, Administrative Law Judge Sharon Wells agreed with the CTA Trade Coalition and sustained the Charge, finding that the CTA's corrective action guidelines could not be relied upon in disciplinary proceedings and entered a comprehensive order effectuating her ruling. (Exhibit B to this Complaint, the ALJ's "Recommended Decision and Order" dated June 28, 2006 ("Decision") with an attached "NOTICE TO EMPLOYEES."

21. Though Plaintiff's union was not part of the CTA Trade Coalition, he is entitled to all the relief afforded by the ALJ's ruling because the ruling and notices do not contain words of limitation but rather apply on their face to all trade workers suffering discipline where the unbargained-for "corrective action guidelines" formed the basis for that discipline.

22. The CTA's own policy Notice purporting to reflect the Labor Board's ruling, states in part that the CTA "WILL adjust, correct or expunge the disciplinary records of affected employees to reflect the CTA's reliance on previous guidelines in imposing discipline. . . ."

23. Both the Arbitrator in Plaintiff's third-step proceeding and the CTA are chargeable with notice that the arbitrator exceeded his authority in relying in his Decision on the unbargained-for "corrective action guidelines" as this precise issue had been presented to the Illinois Labor Relations Board pursuant to the Illinois Public Labor Relations Act more than a year earlier.

24. The ruling here is fully retroactive and ordered defendant CTA to "adjust, correct or expunge the disciplinary records of affected employees to reflect the CTA's reliance on previous guidelines in imposing discipline. . . ."

23. On learning of the Notice and ruling, Plaintiff immediately requested the CTA in writing to comply with the ruling, apply it to his circumstances, and order a new arbitration. The CTA declined. Group Exhibit C to this Complaint.

**VENUE AND JURISDICTION**

24. Defendant CHICAGO TRANSIT AUTHORITY is a duly constituted Illinois municipal corporation, which has a substantial physical and corporate presence within the Northern District of Illinois. The Northern District of Illinois is an appropriate venue under 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this district.

25. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C §1331, 42 U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C.

§ 1343(c), and over attorney's fees under 42 U.S.C. § 1988. Plaintiff complains of personal injuries suffered as a result of defendants' numerous violations of his constitutional rights.

## COUNT I
### (EQUAL PROTECTION VIOLATION)

26. Paragraphs 1 - 25 are incorporated by reference as if fully set out in this Count I.

27. The CTA, in violation of the Equal Protection Clause, arbitrarily and vindictively refused to apply a ruling of the Illinois Labor Relations Board to Plaintiff, though the ruling on its face, entitled Plaintiff to relief, including a new arbitration hearing, a ruling defendant was required to apply to all those in plaintiff's class of similarly situated workers and no rational basis exists for the differential treatment in worker discipline.

## COUNT II
### (DUE PROCESS VIOLATION)

28. Paragraphs 1 - 27 are incorporated by reference as if fully set out in this Count II.

29. The CTA's refusal to equally apply the Administrative Law Judge's Decision on behalf of the State of Illinois, Illinois Labor Relations Board, to plaintiff violated his constitutional right to due process, and specifically, his right to substantive due process of law, by arbitrarily refusing to permit plaintiff to be judged solely under bargained-for disciplinary standards.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff PETER "PETE" DEMOS respectfully requests this Court enter an order on his behalf and against Defendant Chicago Transit Authority as follows:

    a.    The Court should declare, decree and adjudge that Defendant CTA has violated Plaintiff's constitutional rights;

    b.    Grant a preliminary and permanent injunction against Defendant CTA and its officers, agents, and managers, from continuing to violate those rights, and protect Plaintiff and other similarly situated employees by applying fairly the ruling of the Illinois Labor Relations Board ordering new disciplinary hearings for all trade employees subjected to discipline under the unbargained-for "corrective action guidelines" and granting Plaintiff a new disciplinary hearing, including arbitration;

    c.    Enjoin the Defendant CTA and its officers, agents, and managers to comply with the ruling of the Illinois State Labor Board, and to refrain from retaliating against Mr. Demos and other similarly-situated employees and interfering with their rights and protections and award appropriate equitable relief;

    d.    Order the CTA to pay compensatory damages in an amount sufficient to punish it for its violation of Plaintiff's constitutional rights and to deter it from continuing with its discriminatory practices;

- e. Order that Plaintiff's termination to be null and void, and order Plaintiff's reinstatement with back pay pending a new disciplinary hearing;
- f. Award pre-judgment interest;
- g. Award Plaintiff his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

By: /s/ John Thomas Moran, Jr.
Attorney for Plaintiff.

Moran Law Group
Suite 900
309 W. Washington St.
Chicago, IL. 60606
(312) 630-0200
j.t.m.moran@gmail.com

## CERTIFICATE OF SERVICE

  The undersigned, an attorney, certifies that a copy of the foregoing SECOND AMENDED COMPLAINT was served this July 24, 2008, by e-filing in accordance with Federal Rule of Civil Procedure 5, Local Rule 5.5, and the General Order on Electronic Case Filing, XI(C), on:

        Carole A. Corns, CTA Attorney
        567 West Lake St.
        Chicago, Illinois 60601
        ccorns@transitchicago.com


        /s/ John Thomas Moran, Jr.
        Attorney for Plaintiff.


MORAN LAW GROUP
309 West Washington Blvd.
Suite 900
Chicago, Illinois 60606
312.630.0200